UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                                    Case No. GG 18-03365-jtg

SHARON KAY NORBECK,                                       Chapter 13

            Debtor.                                       Hon. John T. Gregg

_____/

**OPINION REGARDING MOTION FOR DETERMINATION OF FEES,
EXPENSES, OR CHARGES UNDER FED. R. BANKR. P. 3002.1**

APPEARANCES:  Jeremy B. Shephard, Esq., USA DEBT BANKRUPTCY ATTORNEYS, Grand Rapids, Michigan for Sharon K. Norbeck; Karen L. Rowse-Oberle, Esq., BUTLER ROWSE-OBERLE PLLC, St. Clair Shores, Michigan for Mortgage Center, LLC

Mortgage Center, LLC (the "Mortgagee") filed a notice pursuant to Rule 3002.1(b) of the Federal Rules of Bankruptcy Procedure reflecting a change in the post-confirmation monthly mortgage payment due and owing by Sharon K. Norbeck (the "Debtor").[1]  Two months later, the Mortgagee filed a second notice asserting flat fees for the preparation of the payment change notice and the second notice itself pursuant to Bankruptcy Rule 3002.1(c).

Concerned that the Mortgagee's fees are excessive in light of the tasks performed, the Debtor filed a motion [Dkt. No. 43] (the "Motion") for a determination of the appropriate amount of fees under Bankruptcy Rule 3002.1(e).  In its response [Dkt. No. 49] (the "Response"), the Mortgagee contends that its fees are reasonable under the circumstances.

For the following reasons, the court shall grant the Motion.

---

[1]     The Bankruptcy Code is set forth in 11 U.S.C.§§ 101 *et seq*.  Specific sections of the Bankruptcy Code are identified herein as "section __."  The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq*. and are specifically referred to herein as "Bankruptcy Rule __."

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## BACKGROUND

The facts are straightforward.  In late 2014, the Mortgagee loaned the Debtor and her now deceased spouse funds for the purchase of certain real property in Stanwood, Michigan (the "Residence").  As security for repayment of the debt, the Debtor and her spouse granted to the Mortgagee a mortgage lien on the Residence.

The mortgage, a copy of which is attached to the Mortgagee's proof of claim no. 10-2, states in relevant part that the Debtor may be required to reimburse the Mortgagee for "*reasonable attorneys' fees* to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding."  (Mortgage at § 9 (emphasis added).)  In a separate section, the mortgage states that:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection, and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(Mortgage at § 14.)  The mortgage provides that the law of the jurisdiction in which the Residence is located (*i.e.*, the State of Michigan) shall control.  (Mortgage at § 16.)

On August 3, 2018, the Debtor filed a petition for relief under chapter 13.[2]  On the same day, the Debtor filed her proposed chapter 13 plan [Dkt. No. 4], which was thereafter amended [Dkt. Nos. 17, 22].  In her plan, the Debtor proposed to maintain her continuing monthly mortgage

---

[2]   The Debtor designated the Residence as her primary residence for purposes of this case.

payments for the Residence.  With no objections filed, the court entered an order [Dkt. No. 28] on October 19, 2018 confirming the Debtor's plan.

On March 15, 2021, the Mortgagee used Official Form 410S1 to file a notice of payment change stating that the Debtor's monthly mortgage payment would increase by just over $100 due to an escrow account adjustment (the "Payment Change Notice").  The Mortgagee subsequently filed a notice of post-petition mortgage fees, expenses, and charges on Official Form 410S2 (the "Fee Notice").  The Fee Notice informed the Debtor and the chapter 13 trustee that the Mortgagee was asserting attorneys' fees in the aggregate amount of $275.00 for the period of March 15, 2021 through May 4, 2021.  The Mortgagee attached to the Fee Notice a document entitled an "Activities Export" that summarily identified (i) a flat fee of $125.00 for preparation of the Payment Change Notice by a paralegal, and (ii) a separate flat fee of $150.00 for preparation of the Fee Notice by an attorney.

The Debtor filed her Motion on the same day that the Fee Notice was filed.  In the Motion, the Debtor concedes that the mortgage generally provides the Mortgagee with a right to charge her for attorneys' fees incurred.  However, the Debtor argues that the two fees asserted in the Fee Notice are excessive given the largely clerical or administrative nature of the tasks performed.  The Debtor further contends that to the extent the Mortgagee is relying on the Fannie Mae Allowable Bankruptcy Attorney Fee guidelines (the "Fannie Guidelines"), they are not determinative, as they only set forth the maximum amount of fees for particular tasks.  As such, the Debtor argues that reasonable fees in this case should be significantly less than those in the Fannie Guidelines.

In its short Response, the Mortgagee generally admits or denies the allegations in the Motion while including some additional alleged factual statements and arguments as to the reasonableness of the fees.  The Mortgagee agrees with the Debtor that the Fannie Guidelines are

not dispositive, noting that in some instances its attorneys' fees might exceed those in the Fannie Guidelines.

The court held a hearing on the Motion on May 26, 2021.[3]  At the conclusion of the hearing, the court took the matter under advisement.

## **DISCUSSION**

The starting point is section 1322(b)(2), which provides, in pertinent part, that a chapter 13 plan "may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . ." 11 U.S.C. § 1322(b)(2). Notwithstanding subsection (b)(2), section 1322 allows a debtor to cure any default and maintain payments under the security agreement granting the secured creditor an interest in the debtor's principal residence.  11 U.S.C. § 1322(b)(5).  In this case, section 1322(b)(5) is applicable because the Debtor's confirmed plan requires the Debtor to maintain her continuing monthly mortgage payments by making them directly to the Mortgagee.

A.      *Bankruptcy Rule 3002.1*

Effective as of December 1, 2011, Bankruptcy Rule 3002.1 implements section 1322(b)(5) by establishing certain procedures related to, among other things, fees, expenses, and charges incurred post-petition.[4]   The Advisory Committee Notes describe the purpose of the rule as follows:

> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any prepetition arrearage . . . and the amount of the postpetition payment obligations.  If the latter amount changes over time, due to the adjustment

---

[3]      During the hearing, the parties requested that the court decide the matter without the need for further proofs or an evidentiary hearing.  To his credit, counsel for the Debtor indicated that he was not charging his client for his services related to this dispute.

[4]      Bankruptcy Rule 3002.1 was amended in 2016 to clarify that it applies "even if there is no prepetition arrearage to be cured."  Fed. R. Bankr. P. 3002.1 advisory committee note to 2016 amendment.

> of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment. Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay.

Fed. R. Bankr. P. 3002.1 advisory committee's note in 2011; *see In re Formosa*, 582 B.R. 423, 427 (Bankr. E.D. Mich. 2018).

Consistent with section 1322(b)(5), Bankruptcy Rule 3002.1 only applies to claims "secured by a security interest in a debtor's principal residence . . . for which the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1(a). The rule requires the holder of a claim to file and serve a notice of any change in the payment amount under a mortgage by no later than twenty-one days before the new amount is due. Fed. R. Bankr. P. 3002.1(b)(1). Unless a party in interest files an objection to the notice "by the day before the new amount is due, the change goes into effect, unless the court orders otherwise." Fed. R. Bankr. P. 3002.1(b)(2). In this case, the Mortgagee properly filed its Payment Change Notice within the prescribed time, by using the requisite official form, and by relating the notice to its previously filed proof of claim. *See* Fed. R. Bankr. P. 3002.1(d).

Rule 3002.1 also establishes the procedure for the holder of the claim to assert fees, expenses, or charges related to any payment change by providing that:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

Fed. R. Bankr. P. 3002.1(c).  Unlike a proof of claim, a notice under Bankruptcy Rule 3002.1(c) does not constitute *prima facie* evidence of the validity and amount of the fees, expenses or charges.  Fed. R. Bankr. P. 3002.1(d) (referring to and disclaiming any evidentiary effect given under Bankruptcy Rule 3001(f)).  Here, there is no dispute that the Mortgagee complied with the procedural aspects of Bankruptcy Rule 3002.1(c) and (d) when it filed the Fee Notice.

In the event that a debtor and/or the chapter 13 trustee take issue with the fees, expenses, or charges asserted in a notice filed under Bankruptcy Rule 3002.1(c), they may seek a determination from the court.  Bankruptcy Rule 3002.1(e) sets forth the means by which to object to fees, expenses, or charges.  It provides that:

> On motion of a party in interest filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

Fed. R. Bankr. P. 3002.1(e).  Because a notice of payment change under Bankruptcy Rule 3002.1(c) is not *prima facie* evidence of the validity and amount of the asserted fees, expenses, or charges, the holder of the claim, as "the entity with the greater knowledge of the circumstances giving rise to the supplemental charges," bears the burden of proof and the "risk of non-persuasion" with respect to a determination under Bankruptcy Rule 3002.1(e).  *In re Brumley*, 570 B.R. 287, 289-90 (Bankr. W.D. Mich. 2017) (citations omitted).

The Debtor and the Mortgagee seem to agree that the mortgage generally authorizes the Mortgagee to charge fees as a result of its efforts to protect the interest it holds in the Residence while the Debtor maintains its monthly payments to the Mortgagee.  The court is thus called upon to determine a discrete issue – whether the Debtor is obligated under applicable non-bankruptcy

law to satisfy the fees set forth in the Fee Notice.  Or, to put it another way, the sole issue whether the fees asserted by the Mortgagee are reasonable.

B.       *Applicable Non-Bankruptcy Law*

Under appliable non-bankruptcy law – in this case, Michigan law – attorneys' fees are not recoverable unless they are expressly allowed by, among other things, a contract.  *Haliw v. City of Sterling Heights*, 471 Mich. 700; 691 N.W.2d 753, 756 (2005); *see Fleet Bus. Credit, LLC v. Krapohl Ford Lincoln Mercury Co.*, 274 Mich. App. 584; 735 N.W.2d 644, 647 (2007) (citation omitted); *accord Baker Botts, L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015).  A mortgage, like the one at issue in this case, is the type of contract that can include a provision giving rise to an award of attorneys' fees under Michigan law.  *See, e.g.*, *In re Misleh*, 2015 WL 4464148, at *2 (Bankr. E.D. Mich. July 21, 2015) (citations omitted).

To determine whether a fee is reasonable under Michigan law, a court is required to conduct a lodestar analysis by multiplying the rate customarily charged for similar legal services by the reasonable number of hours spent.  *Smith v. Khouri*, 481 Mich. 519; 751 N.W.2d 472, 479-80 (2008).  The following non-exclusive factors may thereafter be applied to adjust the fee upward or downward:

> (i)      the professional standing and experience of an attorney;
>
> (ii)     the skill, time and labor involved;
>
> (iii)    the amount in question and the results achieved;
>
> (iv)    the difficulty of the case;
>
> (v)     the expenses incurred; and
>
> (vi)    the nature and length of the professional relationship with the client.

*Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 702 Fed. App'x 408, 411 (6th Cir. 2017) (citation omitted); *Wood v. Detroit Auto Inter-Ins. Exch.*, 413 Mich. 573; 321 N.W.2d 653, 661 (1982); *see Smith*, 751 N.W.2d at 478 (relying on additional factors set forth in Mich. R. Prof. Cond. 1.5(a)).[5]

Michigan law, like Bankruptcy Rule 3002.1, assigns to the requesting party the burden of proof as to the reasonableness of its attorneys' fees. *Petterman v. Haverhill Farms, Inc.*, 125 Mich. App. 30; 335 N.W.2d 710, 712 (1983) (citation omitted). In order to satisfy its burden, the party must, at a minimum, submit detailed billing records in support of its request. *Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 916 (W.D. Mich. 2009) (citations omitted); *Smith*, 751 N.W.2d at 480; *see also Solomon v. Wein (In re Huhn)*, 145 B.R. 872, 876 (W.D. Mich. 1992).

C.    *Preparation of the Payment Change Notice*

Relying in large part on the burden of proof, the Debtor first objects to the fee asserted for preparation of the Payment Change Notice. According to the Debtor, "[a] fee of $125.00 seems excessive in light of the clerical nature of the notice."

In its Response, the Mortgagee counters by suggesting that the Debtor fails to appreciate the process for preparation of a notice of payment change, which requires a review of an escrow analysis. The Mortgagee relies on the Payment Change Notice itself, a document attached to the Payment Change Notice entitled a Tax and Insurance Account Disclosure Statement, and the Activities Export attached to the Fee Notice. The Payment Change Notice provides the following limited information: (i) the name of the Mortgagee, (ii) the related proof of claim number, (iii) the

---

[5]    The standard under Michigan law is similar to that for examining fees under section 330. *In re Formosa*, 582 B.R. at 434 n.7 (citing *Boddy v. U.S. Bankr. Ct (In re Boddy)*, 950 F.2d 334, 337 (6th Cir. 1991); *Smith*, 751 N.W.2d at 479).

last four digits of the Debtor's account, (iv) the date of the payment change, (v) the new total payment, (vi) the current escrow payment, and (vii) the new escrow payment. The Tax and Insurance Disclosure Statement is likewise quite basic. It is a computer-generated document that a mortgagor might expect to receive (and not be charged for) outside of bankruptcy. It provides a history of tax and insurance payments as well as projections for the same. The Activities Export, a document that seems to have been generated by the Mortgagee's attorney, states that a paralegal employed by the Mortgagee's attorney prepared the two-page Payment Change Notice at a cost of $125.00 on March 15, 2021.

During the hearing, the Mortgagee expanded on its arguments by explaining that in order to prepare any notice of payment change, the Mortgagee's attorney needs to review the escrow history and projections, compare the past escrow amount with the adjusted amount, and ensure that a forbearance period has not impacted the calculation. The Mortgagee further suggested that its attorney needs to take such actions because it assumes the attorney for a debtor is undertaking a similar review. As such, the Mortgagee contends that its attorney needs to be prepared to answer the questions that might be (but are not necessarily) asked at some point in the future by a debtor's attorney.

Upon review of the submitted documents and after considering the Mortgagee's arguments, the court is not persuaded that the Mortgagee is entitled to any fees for preparation of the Payment Change Notice. *See In re England*, 586 B.R. 795, 802 (Bankr. M.D. Ala. 2018) (collecting cases). While the Activities Export might arguably constitute an "itemized statement" in a technical sense, it fails to include the time actually expended by the attorney's paralegal and the billing rate charged. It is therefore impossible for the court to conduct a lodestar analysis.

Moreover, this court, like other courts, rejects as *per se* determinative flat fees that are presumably established by an agreement between the Mortgagee and its attorney. *See, e.g.*, *In re Okafor*, 595 B.R. 903, 909 (Bankr. W.D. Mo. 2018). The Fannie Guidelines, too, are of limited value in this case. They are neither binding on this court nor instructional given the administrative nature of the Payment Change Notice. *See, e.g.*, *In re Moore*, 619 B.R. 35, 37 (Bankr. W.D.N.Y. 2020) (guidelines merely establish maximum charge); *In re Maldonado*, 2019 WL 4410070, at *2 (Bankr. N.D.N.Y. Aug. 6, 2019) (same); *cf. In re Formosa*, 582 B.R. at 435 (awarding fees in excess of those in Fannie Guidelines based on the facts of the case). The Mortgagee has therefore failed to satisfy its burden as to the reasonableness of its fees for preparation of the Payment Change Notice.

Even if the court had been provided with the billing rate and the amount of time expended by the paralegal, the court is not persuaded that the Debtor should be required to pay any part of the fee for preparation of the Payment Change Notice. Unlike, for example, the preparation of an objection to a plan, the Payment Change Notice did not require any substantive analysis or legal expertise. *See, e.g.*, *In re Adams*, 2012 WL 1570054, at *1 (Bankr. E.D.N.C. May 3, 2012). Accordingly, there is no reason that a representative of the Mortgagee could not have extracted the relevant information from its internal records, dropped that information into the form prescribed under Bankruptcy Rule 3002.1(d), and attached the Tax and Insurance Disclosure Statement to it. These are all non-compensable clerical or administrative tasks, none of which required an attorney or paralegal to prepare the notice, analyze the escrow adjustment, review related documents, or prepare to answer questions from the Debtor's attorney that may never come.[6]

---

[6] The fee for preparation of the Payment Change Notice is even less compelling when one considers what typically occurs outside of bankruptcy. If the Debtor had not filed for bankruptcy, the Mortgagee would presumably have just sent the Tax and Insurance Disclosure Statement directly to the Debtor in the ordinary course without the need for any review by an attorney or a paralegal. *See In re Boyd*, 2013 WL 1844076, at *2 (Bankr. S.D. Tex. May

Of course, the Mortgagee had every right to obtain assistance from its attorney and her paralegal.  But that does not mean the Debtor has to pay $125.00 for it.  The court therefore determines that the appropriate fee for preparation of the Payment Change Notice is $0.00.

D.      *Preparation of the Fee Notice*

The fee charged by the Mortgagee for its attorney's preparation of the Fee Notice is a separate, albeit similar, issue.  Emphasizing the Mortgagee's lack of an itemized statement containing the amount of time expended by the attorney and her billing rate, the Debtor speculates that, based on a fee of $150.00, the Mortgagee's attorney spent 0.5 hours to complete the Fee Notice.  The Debtor also deftly notes that the fee to prepare the Fee Notice exceeds the fee to prepare the Payment Change Notice, which, circularly, gave rise to the Fee Notice.

In its Response, the Mortgagee denies the Debtor's allegations for the most part and mistakenly "leaves debtor to her proofs."  The Mortgagee directs the court to the Fee Notice itself and the Activities Export attached thereto.  The Fee Notice states (i) the name of the Mortgagee, (ii) the related proof of claim number, (iii) the last four digits of the Debtor's account number, (iv) the date of a prior notice of post-petition fees, expenses and charges, and (v) that attorneys' fees in the aggregate amount of $275.00 were incurred beginning March 15, 2021 and ending May 4, 2021.

During the hearing, the Mortgagee supplemented its arguments by contending that in order for it to file a notice of fees, expenses, or charges, its attorney needs to review the previously filed proof of claim and the applicable mortgage to determine if fees can even be asserted.  Additionally, the Mortgagee suggests that in order to file a form notifying a debtor and the chapter 13 trustee of

---

1, 2013).  And although a notice of payment change must be filed, it is not required to be signed or filed *by an attorney*, as notices of payment change, like proofs of claim, can be mailed to the attention of the clerk of the court.

its fees, its attorney needs to review the status of the plan and the payments made to date thereunder.[7]

The Mortgagee's arguments in connection with preparation of the Fee Notice fall short. Again, the Mortgagee has not provided the time spent or billing rate charged. In the absence of this information, the Mortgagee seems to rely upon the Activities Export, which states only that the Mortgagee's attorney prepared the Fee Notice at a cost of $150.00 on March 15, 2021. However, for the reasons already stated in connection with the Payment Change Notice, the Mortgagee has failed to satisfy its burden of proof.

Even if the Mortgagee had provided the requisite information for the court to conduct a lodestar analysis or otherwise somehow assess the flat fee, the court would still decline to award any fees in this case. In order to prepare the Fee Notice, the Mortgagee did not need to engage in any legal analysis that required review of the mortgage, the proof of claim or the confirmed plan (a form adopted for use in the Western District of Michigan). *See In re Carr*, 468 B.R. 806, 808 (Bankr. E.D. Va. 2012).[8] The Fee Notice is a two-page form requiring information that can easily be imported by a representative of the Mortgagee, who presumably has access to a copy of the attorney's invoices. *See id.* Based on the limited facts presented, preparation of the Fee Notice, like preparation of the Payment Change Notice, was nothing more than an administrative or clerical endeavor that the Debtor should not be required to pay for. The court therefore determines that the Mortgagee is entitled to $0.00 for preparation of the Fee Notice.

---

[7]     In the Response, the Mortgagee stated that the billing rate of its attorney is $350.00 per hour. However, during the hearing, the attorney explained that she does not bill the Mortgagee by the hour. Instead, flat fees based on particular tasks are charged. The court has no reason to second guess the fee structure between the Mortgagee and its attorneys, which is a matter of contract between those parties.

[8]     A review of the claims register reveals that the Mortgagee previously filed other notices of payment change and notices of fees, expenses, or charges, meaning that the Mortgagee's attorney may have reviewed those documents many times over prior to the preparation of the Fee Notice.

## CONCLUSION

To wrap it up, the court's point is a simple one. The forms that are required to be used under Bankruptcy Rule 3002.1(d) are user-friendly, particularly for holders of mortgages (like the Mortgagee) who are quite well-versed in the notice requirements under Bankruptcy Rule 3002.1. The Mortgagee may have instructed its attorney to review, sign and electronically file the two notices under Bankruptcy Rule 3002.1. That is the Mortgagee's decision. However, such preference alone does not entitle the Mortgagee to recover from the Debtor or to charge against the Residence the amount of the attorneys' fees incurred along the way.[9]

Based on the facts and circumstances of this case, the court sees no reason why the Payment Change Notice could not have been prepared and filed by the Mortgagee, thereby rendering the Fee Notice and, consequently, the fee for preparing the Fee Notice, wholly-unnecessary. To be clear, the court's conclusions in this case should not be construed as *per se* proclamations regarding the reasonableness of fees for preparation of notices in other cases. Rather, the court will continue to make determinations under Bankruptcy Rule 3002.1(e) on a case-by-case basis.[10]

For the foregoing reasons, the court shall grant the Motion. The court shall enter a separate order consistent with this Opinion.

---

[9]    The court's decision is not intended to be critical of the Mortgagee's attorney or paralegal, who, as agents of the Mortgagee, prepared the notices at its request. The Mortgagee's professionals in this case frequently appear before this court with a great deal of professionalism and a high degree of competence.

[10]    The Debtor requested sanctions under Bankruptcy Rule 3002.1(i) for the Mortgagee's failure to provide requisite information under Bankruptcy Rule 3002.1(c). The court declines to sanction the Mortgagee, especially because no evidence has been introduced that the Mortgagee's conduct is recurring. However, parties are now on notice that the court is not receptive to fees charged for clerical tasks under Bankruptcy Rule 3002.1(c).

**Signed: June 15, 2021**





John T. Gregg
United States Bankruptcy Judge